IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOHNNY PATTMAN                                                                    PLAINTIFF

VS.                                                    CIVIL ACTION NO. 3:09CV570HTW-LRA

MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY;
HINDS COUNTY SHERIFF'S DEPARTMENT;
JACKSON POLICE DEPARTMENT AND CITY OF
JACKSON; TROOPER JAMES GRAY C-45;
MISSISSIPPI HIGHWAY PATROL; UNKNOWN HINDS
COUNTY SHERIFF'S DEPUTIES A & B; UNKNOWN
JACKSON POLICE OFFICERS C & D; AND OTHER
JOHN DOES E-I                                                                    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>
<u>GRANTING SUMMARY JUDGMENT</u>

        This cause came before the court on a motion for summary judgment [docket no.

26] filed by defendants, Mississippi Department of Public Safety; the Mississippi

Highway Patrol; and Mississippi Highway Patrol Trooper James Gray.  Also before the

court is defendants' motion to strike the plaintiff's expert designations [docket no. 21].

        In his complaint, plaintiff Johnny Pattman alleges that the defendants violated his

rights, protected by the United States Constitution, when they wrongfully arrested and

incarcerated him.  Plaintiff presses his claims of constitutional violations under Title 42

U.S.C. § 1983, and he has asserted several state law claims.

        Defendants removed this action from the state court on September 21, 2009, to

this federal court.  As authorized by Title 28 U.S.C. § 1331[1] and 28 U.S.C. 1441,[2] this court has subject matter jurisdiction over plaintiff's claims and related motions, to be resolved by federal law under 42 U.S.C. § 1983.  This court has supplemental jurisdiction under 28 U.S.C. § 1367[3] over the plaintiff's state law claims which form the same case or controversy as his § 1983 claims.

The court first will address the defendants' motion for summary judgment [docket no. 26], since such motions may dispose of a lawsuit.  The court, having carefully considered the matter, having heard argument of counsel, and being otherwise fully advised in the premises, indeed finds that this lawsuit should be dismissed. Accordingly, this court finds that defendants' motion for summary judgment is well-taken and will be granted.

## I.  Procedural Background

On September 3, 2009, plaintiff Johnny Pattman ("Pattman"), filed suit in the Circuit Court of the First Judicial District of Hinds County, Mississippi, under the authority of Title 42 U.S.C. § 1983 for alleged violations of his rights protected by the

---

[1] Title 28 U.S.C. § 1331 provides:
The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States.

[2] Title 28 U.S.C. § 1441 states in pertinent part:
(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

[3] Title 28 U.S.C. § 1367 (a) states in pertinent part:
[. . .] in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Fourth, Fifth and Fourteenth Amendments to the United States Constitution.[4]  Pattman also filed state law claims of assault and battery, false arrest, abuse of process, and conspiracy.  In his complaint, plaintiff has accused the following defendants of the abovementioned violations: 1) Mississippi Department of Public Safety  ("MDPS"); 2) Hinds County, Mississippi, Sheriff's Department; 3) City of Jackson, Mississippi, Police Department; 4) City of Jackson, Mississippi; 5) Mississippi Highway Patrol  ("MHP"); 6) MHP Trooper James Gray; 7) Unknown Hinds County, Mississippi, Sheriff's Deputies A & B; 8) Unknown City of Jackson, Mississippi, Police Officers C & D; and 9) Other John Does E-I.

Defendants filed a Notice of Removal on September 21, 2009, under the statutory authority of Title 28 U.S.C. §§ 1441, *et seq*.[5]  Plaintiff voluntarily has dismissed the Hinds County Sheriff's Department, the Jackson Police Department, the City of Jackson, the unknown Hinds County Sheriff's deputies, the unknown Jackson Police Officers, and the John Doe defendants.  The remaining defendants are MDPS, MHP, and Trooper James Gray ("Gray").

---

[4]  U.S. CONST. amend IV states:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend V states in pertinent part:
    No person shall [. . .] be deprived of life, liberty, or property, without due process of law [. . .].

U.S. CONST. amend XIV, § 1 states in pertinent part:
    No State shall [. . .] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[5]  *See* Title 28 U.S.C. § 1441, *supra* note 2.

3

On August 25, 2010, defendants filed a motion to strike the plaintiff's expert designations [docket no. 21].  On October 12, 2010, with leave from the court for an extension of time, defendants filed a motion for summary judgment [Docket No. 26].  Plaintiff filed a response to defendant's motion for summary judgment [Docket No. 32] on November 15, 2010.

## II.  FACTS

On February 29, 2008 at approximately 10: 30 pm, Officer James Gray, a trooper with MDPS, approached a vehicle that had its blinkers flashing and appeared to be disabled on the side of Raymond Road in Jackson, Mississippi.  Gray stopped his marked vehicle to provide blue lights for road safety.  Gray saw two black males arguing near the stopped vehicle.  As Gray got out of his patrol car, the two men began to fight.  Gray ordered them to stop.  One of the men, later identified as Johnny Pattman, failed to obey the order and began cursing Gray.  Gray could not see Pattman clearly because of the rainy weather conditions.   Pattman refused to comply with the order, forcing Gray to draw his weapon.  Gray alleges that Pattman threatened to "get him" for pointing the gun.  Although Pattman did not admit to making threats and cursing Gray, he admitted that he apologized to Gray once inside the patrol car.  Once Pattman got closer and Gray was able to see him clearly, Gray holstered the weapon, handcuffed both men, and called for back up.  Shortly after both men were handcuffed, Jackson Police Department ("JPD") officers arrived and advised that they would transport both men to jail.  Gray later discovered that Pattman was never transported to jail.  While JPD officers were present, Gray told them that he would later file the necessary paperwork to address Pattman's threats.

4

Approximately forty minutes after Gray left the scene, Mike Jones ("Jones"), a long time friend of Gray, contacted Gray by cell phone and described an encounter Jones had with Pattman.  Jones was working as a security guard for Metro Inn Motel in Jackson.  Pattman was a guest at the motel.

In a sworn affidavit, Jones describes the encounter and conversation he had at the hotel with Pattman.  Docket no. 26-3.  Pattman smelled of alcohol, Jones says, and Pattman was slurring his words and stumbling.  Pattman began to talk about an incident that occurred earlier that evening.  Jones says in his affidavit that Pattman threatened to kill Gray because Gray had drawn his gun on Pattman during the incident.  Concerned for Gray's safety, adds Jones, he reported the threats to Gray.  Jones knew Pattman, as he had previously worked as Pattman's supervisor at a security company.  Pattman denied having made any threats to kill Gray, but acknowledged seeing and talking to Jones on the night of the incident.

Gray contacted his supervisor, Master Sergeant Robert Bradley ("Bradley"), to discuss the matter.  Bradley advised Gray to get assistance from the Hinds County Sheriff's Department to make an arrest of Pattman.  Gray prepared  an affidavit, which inadvertently omitted his signature, and an underlying facts and circumstances form for felony assault against a police officer.  Trooper Gray then presented the documents to a Justice Court Judge in Hinds County, Mississippi.   The Judge issued a bench warrant, dated March 3, 2008.  Gray filed the necessary documents, including the affidavit, underlying facts and circumstances form and the bench warrant, with the Circuit Clerk in Hinds County on March 3, 2008.

After filing the appropriate documents with the circuit court, Gray contacted the

Hinds County Sheriff's Department.  The Sheriff's Department provided several deputies to assist in making the arrest. Gray and the deputies entered the Metro Inn Motel and showed the warrant to hotel management personnel.  A hotel manager escorted the deputies to Pattman's room and opened the door with a key.  Pattman and an unidentified man were in the hotel room.  The officers instructed Pattman and the other occupant to show their hands and get on the floor.  The unidentified man complied, but Pattman did not.  Pattman cursed the officers and repeatedly refused to comply.  Pattman reached for something beside the bed, and one of the deputies fired a taser.  One of the  electrodes hit the back of a chair and the other hit  Pattman. Pattman stood up.  The deputy tasered Pattman again and he fell to the floor.  When asked, Pattman could not identify the officer who had tasered him. After handcuffing Pattman, the officers checked the side of the bed, but did not find a weapon. Pattman claimed to have suffered permanent disfigurement as a result of being tasered, demonstrated by alleged scars on his back.  Pattman, however, never sought medical treatment beyond  his initial trip to the doctor when he was taken to jail.

Gray did not taser Pattman as he had not yet completed the required training course and had not been issued a taser at the time of Pattman's arrest.  Gray was not issued a taser until June 26, 2008, after taking the required taser training course pursuant to MDPS policies.

Pattman was arrested and taken to the Hinds County Detention Center in Raymond, Mississippi.   According to Pattman, he remained in jail for three weeks without going before a judge.  The criminal charges were dismissed because Pattman had not been given an initial appearance within forty-eight hours of arrest.

Subsequently Pattman instituted this lawsuit.

Following the removal of the case to this federal court and discovery by the parties, the three remaining defendants moved for summary judgment.  Their motion is supported by deposition excerpts, several affidavits and numerous exhibits.  Plaintiff's response relies primarily on the affidavit of an attorney licensed to practice in the State of Mississippi, which attacks the procedure used by Trooper Gray to obtain a warrant for the plaintiff's arrest, the validity of the bench warrant, and the procedure for executing the warrant.  The affidavit offered by the plaintiff provides no factual support for his response to the defendants' motion for summary judgment.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there exists no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. Proc. 56.  "Summary judgment is an excellent device by which District Courts may make expedited dispositions of those cases in which a trial would be fruitless." *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980).  The question before this court in the action *sub judice* is whether a <u>material</u> issue of fact exists.

The United States Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), stated the following with regard to material facts:

> As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.

The Court explained the purpose of Rule 56 in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-24 (1986) as follows:

> [R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

Thus, only disputes over facts that might affect the outcome of the suit will properly preclude summary judgment.  Furthermore, the existence of a "scintilla of evidence" is not sufficient to defeat a motion for summary judgment.  *Liberty Lobby*, 477 U.S. at 252.  *See also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987).  In order to escape summary judgment, Pattman must demonstrate that a material issue of fact exists.  Because he has failed to do so, summary judgment is appropriate.

### IV.  WHETHER MDPS, MHP AND GRAY, IN HIS OFFICIAL CAPACITY, ARE SUBJECT TO LIABILITY FOR CLAIMS ASSERTED UNDER TITLE 42 U.S.C. §1983.

The United States Supreme Court in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) emphatically stated that "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek" to sue a state.  *Id* at 66.  "The Eleventh Amendment bars such suits unless the State has waived its immunity." *Id*.  This immunity extends to governmental entities that are considered "arms of the state."  *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct.

8

568, 50 L.Ed.2d 471 (1977).

This court explained the effect of *Will* in *Scanlon v. Dept. of Mental Health,* 828 F.Supp. 421, 424 n.4 (S.D. Miss. 1993), by saying "states, state agencies and state officials in their official capacities may not be sued under § 1983 for damages or other retrospective relief [. . .]".

MDPS was established by the Mississippi Legislature as an arm of the State of Mississippi.  *See* Miss. Code Ann. § 45-1-2 (Rev. 2004).  MHP, a branch of the MDPS, therefore, is also an arm of the state.  *See* Miss. Code Ann. § 45-1-2 (Supp.1992); *See also King v. Mississippi Highway Patrol,*  827 F.Supp. 402, 403 (S.D. Miss. 1993) (finding that MHP is an arm of the state because it was created by MDPS).  Mississippi governmental entities which have been found to be "arms of the state" and immune from liability in federal court are numerous and include the Mississippi Board of Nursing, *O'Neal v. Miss. Board of Nursing*, 113 F.3d 62 (5th Cir. 1997); the Mississippi Department of Transportation, *Cooley v. Miss. Dept. of Transportation,* 96 F. Supp. 2d 565 (S.D. Miss. 2000); the Mississippi Department of Wildlife, Fisheries and Parks, *Kinnison v. Miss. Dept. of Wildlife, Fisheries and Parks*, 990 F. Supp. 481 (S.D. Miss. 1998); the Mississippi Highway Patrol, *King v. Miss. Highway Patrol*, 827 F. Supp. 402 (S.D. Miss. 1993); the Mississippi Department of Mental Health, *Scanlon v. Department of Mental Health*, 827 F.Supp. 402, (S.D.Miss.1993); and the Mississippi Department of Public Welfare, *Chrissy F. v. Miss. Dept. of Public Welfare*, 780 F. Supp 1104 (S.D. Miss. 1991).[6]

---

[6] This case was reversed and rendered on a separate issue unrelated to the reason for its citation here.  The reversal and rendering of the case centered on the district court's improper exercise of jurisdiction in granting the plaintiff injunctive relief against two defendants,

## V.  QUALIFIED IMMUNITY AND THE § 1983 CLAIMS

Gray is entitled to qualified immunity from the § 1983 claims brought against him in his individual capacity.  The Fifth Circuit Court of Appeals in *Enlow v. Tishomingo County, Miss.*, 962 F. 2d 501, 508 (5th Cir. 1992), explained the purpose and reasoning behind qualified immunity for public officials stating that:

> Qualified immunity operates to shield government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 523 (1983) (citation omitted).  "[W]here an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Mitchell*, 472 U.S. at 525, 105 S. Ct. at 2815 (citations omitted).  Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's action in light of clearly established law. *Id.* at 639, 107 S. Ct. at 3038.

To satisfy the test for qualified immunity the plaintiff must allege:  (1) that an official has violated the plaintiff's constitutional rights, and (2) the rights in question were clearly established such that the officer's conduct was objectively unreasonable.  *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).

"A right is clearly established when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Gates v. Texas Dept. of Protective and Regulatory Serv.*, 537 F.3d 404, 419 (5th Cir. 2008) (citations omitted).  Further, the courts apply an objective standard to determine if an officer's conduct was reasonable.  To overcome summary judgment, the plaintiff must

---

specifically, Sebe Dale, Jr., the Chancellor for the Tenth Chancery Court District of Mississippi and Garland Upton, the Referee of the Marion County Youth Court. *See Chrissy F. v. Miss. Dept. of Public Welfare*, 995 F. 2d 595 (5th Cir. 1993).

offer sufficient facts to show that a reasonable official in the defendant's situation, given the facts and circumstances faced by the officer, would have understood that his conduct violated the defendant's rights. *Brewer*, 3 F.3d at 820.

In the context of summary judgment, a government official need only plead qualified immunity, to shift the burden to the plaintiff. *Id*. The plaintiff must then rebut the defense with a showing that satisfies the two prongs of the test articulated above. *Id*. Qualified immunity shields the defendant from suit as well as liability. *Id*.

Section 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

In this case, Pattman alleges that Gray violated his Fourth, Fifth, and Fourteenth Amendment rights by subjecting him to excessive force, false arrest, abuse of process, and a conspiracy. Pattman charges that Gray used excessive force by tasering him multiple times; wrongly arrested him without probable cause or a valid arrest warrant; denied Pattman his due process rights by allowing him to remain in custody for approximately three weeks; and conspired with the other named defendants to commit the above violations.

After a review of the record evidence and arguments of the parties, this court finds that Pattman has failed to demonstrate a violation of a clearly established constitutional right by defendant Gray. Further, even if this court were to find that Gray violated Pattman's rights, this court is persuaded that Gray's conduct was objectively reasonable in light of the circumstances of the arrest and actions taken by Gray. The

court will address each of Pattman's claims below.

     **A.**    **The excessive force claim.**

     To prevail on a  §1983 excessive force claim under the Fourth Amendment, Pattman  bears the burden of showing:  (1) that he was seized; (2) that he suffered an injury; (3) which "resulted directly and only from the use of force that was excessive to the need; and that (4) the force used was objectively unreasonable."  *Flores v. Palacios*, 381 F. 3d 391, 396 (5th Cir. 2004).  Although Pattman need not show that he suffered a significant injury, he must assert that he "suffered at least some form of injury." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citations omitted).  Moreover, any injury suffered "[m]ust be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed."  242 F.3d at 314.

     Pattman has provided no evidence that Gray used excessive force under the circumstances on the night of their initial encounter by the side of the road, or at the time of Pattman's arrest.  Pattman can only establish the first element of his excessive force claim–seizure.   In *Flores v. Palacios*, 381 F. 3d 391, 398 (5th Cir. 2004), the court stated that in making a determination about  "whether a seizure was objectively reasonable, and thus whether an injury is cognizable, we ask 'whether the totality of the circumstances justified [that] particular sort of search or seizure.'" (quoting *Tennessee v. Garner,* 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).  The objective reasonableness of force used by an officer necessitates a balance between the "[a]mount of force used against the need for force." *Flores*, 381 F.3d at 399 (internal citations omitted).

Here, Gray concedes he initiated Pattman's arrest.  Pattman, however, cannot prove that Gray utilized force, excessive or otherwise, to effect the arrest. Concomitantly, Pattman cannot show any injury or satisfy any of the other elements required for an excessive force claim against Gray.

According to Pattman's own deposition, during Pattman and Gray's initial confrontation on the side of the highway, Gray found Pattman in an altercation with Pattman's son.  Pattman alleges only that Gray pulled his gun, told Pattman to "freeze", handcuffed Pattman, and yelled at him.  Given the circumstances, none of these actions can be considered a use of excessive force.

At the time of Pattman's arrest, Gray did not taser Pattman.  First, Gray did not have a taser at the time of the arrest.  He had not yet been issued a taser pursuant to the policies of the MDPS.  Secondly, Pattman admitted that he did not know who tasered him.  Thirdly, Pattman was noncompliant.  According to Gray, a hotel manager escorted the deputies to Pattman's room and opened the door with a key.  Pattman and an unidentified man were in the hotel room.  The officers instructed Pattman and the other occupant to show their hands and get on the floor.  The unidentified man complied, but Pattman did not.  Pattman, instead, cursed the officers and repeatedly refused to comply.

Pattman contradicts his own testimony regarding these events because he initially testified that he put his hands up when the officers entered, but then stated that he had his back turned toward the officers when he was tasered.  According to Gray, Pattman's back was turned because he reached for something along the bedside, which the officers could not see.  Then, one of the deputies fired a taser.  One of the

13

electrodes hit the back of a chair and the other hit Pattman.  Pattman stood up, and one of the deputies tasered him again.  He fell to the floor.  When they searched the bedside, the officers found nothing.  By the officers' version of the event, the officers' use of the taser on Pattman was not excessive to the need, but appropriate and objectively reasonable based on Pattman's actions.

What, though, is the virility of Pattman's excessive force claim if, notwithstanding his contradictory assertions above-mentioned, the court were to discern genuine issues of fact whether Pattman ever made a furtive move justifying tasering?  Pattman does not name Gray as the officer who tasered him.[7]  He does not accuse Gray of giving any such order or of even knowing that the other officers had tasers.  The Sheriff's deputies who tasered Pattman have been dismissed from this lawsuit.  Viewing the allegations in the light most favorable to the plaintiff, Gray, thus, is entitled to summary judgment on this claim.

**B.**     **The false arrest claim**.

The Fifth Circuit has held that "a police officer must make a determination of probable cause before he causes any significant pretrial restraint of liberty." *Martin v. Thomas*, 973 F. 2d 449, 453 (5th Cir. 1992) (citing  *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272, 278 (5th Cir. 1992)).  The court, in *Martin v. Thomas,* cautioned that officers, in making a determination of probable cause, are neither required to be perfect nor do they always have to err on the side of caution "out of fear of being sued."  973

---

[7]  In his complaint, plaintiff states "[t]hat said Defendants, including, but not limited to two (2) unknown Hinds County Sheriff's Deputies and/or two (2) unknown Jackson Police Officers assaulted Plaintiff by shooting him with a taser gun, striking him multiple times about the body."  Complaint at 4.

14

F.2d at 453 (internal citations omitted).  Officers are required to make a reasonable determination regarding whether probable cause exists:

> Whether an arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it - whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Id* (citing *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)).

To prevail on his false arrest claim, Pattman must show that Gray did not have probable cause to arrest him.  *Mitchell v. City of Jackson*, 481 F. Supp. 2d 586, 588 (S.D. Miss. 2006).  The totality of the facts and circumstances known to Gray support his determination, whether correct or not, that Pattman had threatened him or committed felony assault on a police officer on the night of February 29, 2008.  Gray says that Pattman threatened Gray on the side of the road.  Later Gray was notified by a trusted long-time friend, who also knew Pattman, that Pattman had threatened to kill Gray.  Gray was concerned that Pattman could and would carry out his threat.  Furthermore, Gray prepared an affidavit and an underlying facts and circumstances form regarding these incidents.  Gray presented these documents to a judge and secured a bench warrant prior to arresting Pattman.  "If there is probable cause for the charges made, then the plaintiff's arrest is supported by probable cause, and a claim for false arrest must fail."  *Mitchell*, 481 F. Supp. at 588 (quoting *Croft v. Grand Casino Tunica, Inc.*, 910 So. 2d 66, 75-76 (Miss. Ct. App. 2005).

Pattman alleges that no probable cause existed because Pattman's actions did not constitute the felony of simple assault on a police officer under Mississippi law, the

charge for which Pattman was arrested.  Under Mississippi Code Annotated § 97-3-7(1), simple assault requires the party charged to use "physical menace to put another in fear of imminent serious bodily harm."[8]   Pattman argues that even if he did threaten Trooper Gray, the *prima facie* case for simple assault requires "physical menace" and cannot be based on a second-hand comment about a threat made to a third party, such as Gray's associate calling Gray to tell him that Pattman said he was going to kill Gray.

As mentioned above, an officer's determination of probable case need not be perfect.  An officer may be protected by qualified immunity if his determination is reasonable under the circumstances.  *See Martin*, 973 F. 2d at 453.  In the instant case, Gray took several steps to ensure that the arrest was reasonable.  Gray consulted his supervisor, submitted a statement of underlying facts and circumstances to a neutral magistrate, obtained a warrant for Pattman's arrest, and enlisted the assistance of personnel from the Hinds County Sheriff's Department to make the arrest.  Gray's statement of the underlying facts and circumstances submitted to obtain the warrant stated:

> On February 29, 2008 around 2230 pm I was approaching a vehicle that was disabled in the road with blinkers on.  I stopped to provide blue lights as a safety measure.  Shortly afterwards two of the male subjects near the vehicle started to argue.  They then began a physical fight.  I exited my vehicle and asked them to discontinue fighting.  One of them who was later identified as Johnny Pattman failed to obey my command.  I drew my weapon and asked him to put his hands up.  He did not comply.  I then

---

[8] Miss. Code Ann. § 97-3-7(1) (Supp. 2009) defines felony assault and provides in pertinent part: "A person is guilty of simple assault if he . . .(c) attempts by physical menace to put another in fear of imminent serious bodily harm, and upon conviction shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or by imprisonment in the county jail for not more than six (6) months, or both.   However a person convicted of simple assault (a) upon a . . . law enforcement officer . . . shall be punished by a fine of not more than One Thousand Dollars ($1,000.00) or by imprisonment for not more than five (5) years, or both."

> called for back up and handcuffed both subjects that were fighting.
> Johnny Pattman at that time began to verbally threaten me by saying that
> he was going to get me for drawing my weapon.  Jackson Police
> Department arrived on the scene and advised me that they would
> transport the two subjects.  Approximately 40 minutes later an associate
> of mine contacted me by phone and advised me that he was in the
> presence of Johnny Pattman who was at the Metro Inn Motel in Jackson.
> My friend advised me that Johnny Pattman was openly saying that he was
> going to kill me.  I later found out that Johnny Pattman was never
> transported to jail by the Jackson Police Department.  Docket no. 26-6.

Gray provided this statement to the judge who issued the warrant.  The judge had

before him all of the relevant information to determine if a warrant should issue,

including the fact that Pattman's threat against officer Gray was made to a third party

and relayed to Gray over the phone.  The Justice Court Judge deemed this information

sufficient to issue a bench warrant for Pattman's arrest for felony simple assault on a

police officer.  Gray engaged in multiple steps to ensure that Pattman's arrest was

reasonable and appropriate, from discussing the situation with his supervisor to

obtaining a valid arrest warrant.  This court is persuaded that Gray acted reasonably

under the circumstances.  Even if in error in his understanding of the statute in

question, he was in error because his supervisor and a judge were in error.  Gray,

therefore, is entitled to qualified immunity on this claim.

### C.    The abuse of process claim.

Pattman contends that Gray should have known that he had not committed a

crime and holds him responsible for the three weeks Pattman spent in jail at the Hinds

County Sheriff's Department without making his initial appearance. Pattman has failed

to plead factually specific allegations against Gray regarding his custody in the Hinds

County Detention Center.  The charge against Pattman was ultimately dismissed

because Pattman did not have an initial appearance within forty-eight hours of arrest as required by Rule 6.03 of the Uniform Rules of Circuit and County Court Practice.[9] URCCC 6.03, however, does not require an arresting officer to schedule, provide or bring  those arrested and charged with a crime before a judicial officer within forty-eight hours.  The court dismisses this claim of abuse of process.

### D.   The conspiracy claim.

Pattman contends that all of the named defendants conspired to deprive him of his civil rights pursuant to Title 42 U.S.C. §1983.  "A conspiracy may be charged under ... §1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act."  *Vanderburg v. Harrison County, Mississippi*, 2010 WL 2036910, *6 (S. D. Miss. May 10, 2010) (quoting *Hale v. Townley*, 45 F. 3d 914, 920 (5th Cir. 1995).  This particular conspiracy charges that Gray, MDPS, MHP and others conspired to commit all of the above listed violations and caused him to be deprived of his liberty for approximately three weeks.  To prevail on a §1983 conspiracy claim, a plaintiff must show: "1) the existence of a conspiracy that involves state action; and 2) the deprivation of civil rights in furtherance of a conspiracy by a party to the conspiracy."  *Salts v. Moore*, 107 F. Supp. 2d 732, 739 (N.D. Miss. 2000) (citations omitted).

Pattman has offered no evidence of a conspiracy between Gray, MDPS, MHP and the other officers to commit the alleged acts against him.  Gray sought assistance from the Hinds County Sheriff's Department to make the arrest as instructed by his

---

[9]URCCC 6.03 provides in pertinent part that: "Every person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for initial appearance."

supervisor.  The charge and arrest were made based on what appeared to be probable

cause and a valid arrest warrant.  Although Pattman was tasered, Gray was not the

officer who tasered him.  Pattman was tasered by one of the deputies during the arrest.

Furthermore, Gray was not responsible for insuring that Pattman received his initial

appearance pursuant to court rules.  This court, therefore, grants summary judgment to

Gray as to Pattman's conspiracy claim.

## VI.  STATE LAW CLAIMS AND
## THE MISSISSIPPI TORT CLAIMS ACT

The Mississippi Tort Claims Act ("MTCA" or "Act") requires any claim based in

tort against a governmental agency and its employees to be brought under the Act. *City

of Jackson v. Powell*, 917 So.2d 59, 77 (Miss. 2005);  Miss. Code. Ann. §11-46-7.[10]

The MTCA waives the States' immunity in certain circumstances, but requires that a

claimant give ninety (90) days notice prior to filing a lawsuit.  *Black v. City of Tupelo*,

853 So.2d 1221, 1226 (Miss. 2006); Miss. Code Ann. § 11-46-11(1).[11]  The notice

---

[10] Miss. Code Ann § 11-46-7 states in pertinent part:
(1) The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee or the estate of the employee for the act or omission which gave rise to the claim or suit; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary.
(2) An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

[11] Miss. Code Ann. § 11-46-11(1) states:
After all procedures within a governmental entity have been exhausted, any person having a

requirement is mandatory and must be satisfied prior to the commencement of a tort

lawsuit against a government agency or one of its employees.  853 So.2d at 1226.  The

Mississippi Supreme Court has adopted a substantial compliance standard to

determine whether notice of claim requirements have been fulfilled.  *Id.*  Although

Pattman alleged at oral argument that he filed a notice of claim, he has offered no proof

in the record that he has followed the procedures set forth for filing a notice of claim

under the MTCA.  This failing alone would serve to bar the plaintiff's state law claims.

In addition to the notice requirement, the MTCA has a one year statute of

limitations for filing suit.[12]  The events in question began on February 29, 2008 and

concluded on March 26, 2008, when Plaintiff was released from the Hinds County

Detention Center.  Plaintiff did not file the current action in state court until September

3, 2009, a little over seventeen months after the events which gave rise to his lawsuit.

The plaintiff has neither alleged that he filed the instant action within the one year

required time frame, nor provided record evidence that his action was somehow timely.

Plaintiff's state law claims are, therefore, dismissed as time-barred.

## VII.  CONCLUSION

Defendants Mississippi Department of Public Safety, Mississippi Highway Patrol,

---

claim for injury arising under the provisions of this chapter against a governmental entity or its
employee shall proceed as he might in any action at law or in equity; provided, however, that
ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim
with the chief executive officer of the governmental entity.

[12] Miss. Code Ann. § 11-46-11(3) states in pertinent part
All actions brought under the provisions of this chapter shall be commenced within one (1) year
next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability
phase of the action is based, and not after; provided, however, that the filing of a notice of claim
as required by subsection (1) of this section shall serve to toll the statute of limitations for a
period of ninety-five (95) days from the date the chief executive officer of the state agency
receives the notice of claim.

and Trooper James Gray's Motion for Summary Judgment [docket no. 26] is granted.

This cause is dismissed with prejudice.  The parties are to bear their own costs.

The court will enter a final judgment in accordance with the local rules.

**SO ORDERED AND ADJUDGED**, this the 13th day of September, 2012.


_____/s/ Henry T. Wingate_____
UNITED STATES DISTRICT JUDGE


Memorandum Opinion and Order Granting Summary Judgment
Civil Action No. 3:09-cv-570-HTW-LRA